Good morning again, ladies and gentlemen. The next case on the calendar for argument is McCutcheon v. DiCarlo. Counsel? It pleases the Court, William Harris for Mr. McCutcheon. In this case, my client picked up a felony strike and nine years in state prison when a time-served offer lapsed. In order for my client to prevail in this case, he needs to show deficient performance in the plea bargaining process, resulting prejudice and an unreasonable state determination to the contrary. And I think the real questions here are on the latter, too. On performance, both the State court and the district court pretty much conceded that there was deficient constitutional performance. And the nub of the issue came down to prejudice. In this case, we've cited a number of — the question is, was Mr. McCutcheon amenable to a plea? Or was this just a tough customer who just — this guy wanted to stay in court? The facts are — is this correct, that the disagreement that he was not told that there would be a time by which he had to agree to the plea or the offer would expire? That's correct. He was not told about exposure, and he was not told about the fact that the offer would lapse if not accepted. So that was the reason that there was deficient performance. It's hard to see how, when you're advising a client about a plea offer — But the — but the judge said there was no showing that he would have accepted the deal rather than go to trial. Correct. The State finding that we have to overcome is that Mr. McCutcheon was not amenable to a plea. In other words, he wasn't in the market to settle his case. And — How do we get around that finding? Well, I think you can get around the finding exactly like Your Honor got around the finding in the Taylor v. Maddox case, in which the — they pretty much — it doesn't survive the intrinsic review. I had a lot of judgment there. Right. It was — I would submit it doesn't survive the intrinsic review, because of the — a number of compelling factual points show that Mr. McCutcheon was more than amenable to the plea, and I've outlined those in the brief and in the reply brief. To me, the fact that he accepted the plea as soon as he learned that it was off the table shows where his mindset was. This was on February 20. The counteroffers that he made during the midst of the plea bargaining process, why — if he wasn't amenable to a plea, why would he make two counteroffers on January 30 and February 11? The medical records before the plea process ended, the January 31 entry and the February 7 entry both show he was excited about the possibility of release on his birthday, which was February 11, the last day. So all these things in the record, he couldn't — the man wanted to get out on his birthday. That's pretty clear, because the first lawyer floated that by him, and that resonated with him. That stuck. So he's thinking, how can I get out on my birthday, and at least I'm going to have a chance to get out on my birthday on February 11. And the reason I think that there was not a deal here is that Mr. McCutcheon was a fairly aggressive negotiator. I mean, he eventually wanted to get — find out that his contractor's license wasn't going to be impacted. He wanted to see if he could get rid of probation. And — but the problem is, he was — Kennedy, maybe he just negotiated himself out of a plea bargain. Well, he did. But the problem is, is if you don't know what the parameters of the game are, he would maybe have tempered that aggressiveness if he knew that, number one, he was looking at 17 years if he didn't cut a deal, and number two, that this was take it or leave it by February 11. He didn't know. So he's — So what's the remedy here? He gets to withdraw his plea. He goes to trial. He gets 17 years, right? Nine. You don't think so? No. Oh, no. The remedy we're asking for here? Yes. Well, under the Blaylock — But he wants to — yeah, but he wants to withdraw his plea, right? He wants reinstatement of the last credit for time served offer. Now, in this case, one of the cases that I didn't cite — or one of the statutes I didn't cite in my brief, there's a California Penal Code section 17, I believe it's 17B, that says if the state imposes a sentence of no prison time, that automatically converts to a misdemeanor. So if we got what we're asking for here, it's reinstatement of the last credit for time served offer to put him back to the status quo ante. And then, you know, at that point, I think he's probably going to take it. He's done the time already. And under Penal Code section — How do we know? He may want to bargain again. I doubt it at this point. It'll convert to a misdemeanor. He'll get rid of his strike. He can't get his nine years back, but that's all the law can give him at this point. So that's what we're asking for. The cases and the — It would take nine years to get to this point. It winded its way through the state system. He had an evidentiary hearing in a district court. And, you know, I got the case about a year ago, I think, a year and a half ago. He's now out, right? He's now out. But he's under a supervised release, a probation or something? I think he might still have probation. But the collateral consequence we're asserting here is the felony strike. And actually, there's no Article III problem, because he started — he filed his Federal petition when he was in custody, and he was released during the State court proceedings. So you've got the Article III problem taken care of. But on the prejudice, the two 28J letters that I cited, the Riggs v. Fairman and U.S. v. Kwan, these recent cases, both say that the reasonable probability standard under the prejudice component of Strickland is less than a preponderance. So in deciding whether or not it was an unreasonable State determination, you know, we've got all this evidence here that shows that he was, in fact, bargaining. He wanted to make a deal. But on the prejudice, it's even less than a preponderance, those two cases say. So I think that we've met our burden on all three. And what do you — how — I mean, Superior Court makes two findings, right? One of them is that the plea offer was accurately conveyed to him, right? Yes. I disagree with that. No, I understand. I just want to make sure. Yeah, but that's the first finding. That was the first finding. He says, I don't think there's any dispute the offer is accurately transmitted. And I know you disagree with that. The one — it depends if the actual offer was transmitted, the surrounding — well, it wasn't transmitted, it was the exposure. No, no, the offer was transmitted, but that's not the same as saying he was told about the exposure or he was told about when the offer would expire. Precisely. But the offer of what the substance of the deal was, was transmitted accurately. It was. Yeah. If you — And the second finding is he wouldn't have taken it. I'm having a little bit of difficulty understanding the distinction between those two concepts. Just can you spell them out for me? Between the two findings? Or — Well, the thing Judge Ryan had just said. OK, the — I just want to make sure I understand. OK, so — So what was the thing that was conveyed in your view and the thing that was not conveyed? What was conveyed was, Mr. McCutcheon, here's the deal. One year and you're out. One year county jail time and you're out. Eventually, what was conveyed was you get out today. Well, he — Well, it was not — It was conveyed to him, but the second part is he wasn't apprised of his exposure. Correct. And what else — Nor of the fact it was going to lapse. Nor the fact it was lapse. So those are two things that weren't conveyed. And then the district court made the second finding was he wouldn't have taken any deal. Yeah. The district court and the evidentiary hearing in the state court both said, you know, this guy was stubborn. He wasn't going to take any deal. And — And what are the facts that you have that say justified our finding that that was clearly erroneous or an abuse of discretion, whichever it is? The facts — there's five. Number one, the two 2097 acceptance, the actual acceptance of the deal. The 12-1798 letter by the CYA, as it were, letter later by the lawyer that says, on numerous occasions, he told us time and again he didn't want to go to trial. Three, the counteroffers on 13097 and 2-1197, each of which is inconsistent with not being amenable. The 13197 release discussion in the medical records and the 2797 discussion in the medical records saying McCutcheon's excited about being released in his birthday. Those — those get you past the intrinsic review issue as far as I'm concerned. Thank you. Your time is up. We'll give you a minute for rebuttal. I have a question. All right. You won't get a minute for rebuttal. You get a question instead. Give him a minute for rebuttal anyway. It's my time. I just want to understand the — the — the first finding by Superior Court — I just want to understand your position on this. We don't have to get around that, in a way. What you're saying is the Superior Court didn't make findings on the two points, the collateral — the — the — the exposure and the — and the — and the — the — the — The lapse. The lapse. Correct. So that's — that's — as to that point, this was just a case where the Superior Court didn't make findings, and we are in the position of federal court making findings. That's correct. It's just to make sure I understand. But on the second part, on the he wouldn't have taken an offer anyway, we have to set it aside as, what, not supported by the evidence? There's no way to get around it, in a sense. We have to — We have to overcome it, just like in Taylor v. Nettles. Overrule it, really. Overrule it. Let's say it's an unreasonable determination of the facts. Correct. It falls under the unreasonable determination clause. And the reason would be that, what, that the weight of the evidence — how would one articulate this? Because the — There was certainly some evidence supporting the — the Superior Court's finding. Maybe there's more evidence going the other way, but there's at least some. Well, the way it was articulated in Taylor v. Maddox, that there were significant and compelling portions of the factual record that the State court had before it, but apparently ignored. And that's what I just enumerated. And those are the five factors you just listed. Yes. So we would have to say those five factors show there are significant, compelling factors that the State court didn't address that show that its determination was unreasonable. Absolutely inconsistent with the fact that he's not amenable. All right. Thank you. Thank you. Can you still give him his minute? I might. May it please the Court, Negan Beal, Deputy Attorney General, on behalf of Appellee. Your Honors, I want to clarify a few facts here. First of all, everybody understood that he was facing significant, horrible exposure. That's what the attorney said he told him was, that he faced horrible exposure. And that was that — What do you say, everybody? Excuse me. I didn't. Okay. Mr. McCutcheon understood that he had five felony charges facing him, that he had priors. There was a strike alleged in this case, and that's at ER 149 and 150 of the excerpts of record. But does he know what that means in real time? What was not conveyed to him, pursuant to what the State court judge, it was not conveyed to him the exact specific maximum, which was 17 years and 8 months. So the exact specific maximum was not conveyed to him. But it was conveyed to him that he was facing horrible exposure in this case, because everybody knew this was an allegation of a violent crime, assault with a deadly weapon, with one strike already alleged. The deal that was offered to him was an incredible deal. It was a family dispute, basically, right? It was a family dispute. And that goes to the other point, is that in this case, Mr. McCutcheon always believed that he would win at trial. And that's why he did not want to take this deal, because he contended that he was innocent in this case. Even in his petition in the Federal court, he refers to his assault as an accident. And it was no accident. He was found not credible by the jury. It was found that he was always trying to make a deal. He was always saying, look, I just want to get out today instead of yesterday. Or I want to get out and I want a letter that says I'm a really fine fellow. Or I don't want to have probation. He never said, you know, I want to wipe out, I want to be declared innocent. He always was trying to make some kind of a deal that was a conviction. That's not correct, Your Honor. At page 148 of the excerpts of record, he describes how he believed he was innocent. At excerpt 547. Oh, no, no. I wasn't saying he never said he was guilty. I said he always was trying to make a deal. Again, Your Honor, I disagree. The medical records show that he was anxious to have his day in court. That was in April. That was two months after these negotiations. Three days after the February 11th hearing, he said he told the medical reports, he said he did not want to take the deal. So there is evidence that he did not want to take the deal. And, in fact, the greatest of them Why is he talking deal, deal, deal, deal if he doesn't want to, if he absolutely is not interested? A defendant who really absolutely does not want a deal doesn't have such a discussion, doesn't authorize his lawyer to have this plea bargain discussion with the prosecutor, doesn't talk discussion, doesn't discuss, I'm sorry, doesn't talk deal, doesn't discuss a deal, doesn't ask questions about a deal. I mean, that's wholly and there are, you know, as you know, there are such defendants, defendants who say, look, I don't want to talk about it. I want my day in court. I want a trial. That's all I want. I want to a chance to prove myself innocent. This was not this guy. I would disagree, Your Honor. He was asking questions about his license and he was asking questions about probation. I mean, he was, he clearly was talking deal. Your Honor, I would disagree. And if you read the evidentiary hearing that was held in the State court and if you read the testimony of the attorneys, which was specifically credited by the trier of fact as opposed to the credibility of Mr. McCutcheon, it was the attorneys who were talking deal. The attorneys were begging him to take this deal and everything they came up with. He had a reason. Oh, no, I can't do it because it was, here's one here. Oh, no, I can't do it because I want credit for time served. They came back to him. Okay, you can have credit for time served. We got you credit for time served. Oh, no, he says. I don't want to be on formal probation. So it was the attorneys who were talking deal. Kennedy. Was he told it's going to be 17 years if you don't take the deal? Maybe that would have made him more amenable. Maybe he said, ooh, 17 years sounds like an awful long time. And maybe he would have listened better. He was not told that number 17, but he was told that he would have significant time in State prison. And that's the finding, is he was not told the number 17 years, but he was told he would have significant time in State prison because the attorneys knew. So who would have told him significant time? Attorney McGregor told him that at page, and that's reflected in the excerpt of record at page 60 and at page 211 in the excerpt of record. McGregor says, McGregor says. You told him he, McGregor told him. What's the record? What? Excerpt of record 211. McGregor, this is McGregor's testimony at the State court evidentiary hearing and was found to be credible by the judge. And he says that he told Mr. McCutcheon that he had horrible exposure. So do you remember what line you're reading from or do you have it in front of you? It's line 22, Your Honor, on page 211 of the excerpt of record. All, he had a strike that was alleged, he had a crime, bail, crime, because there were two cases at that time, and he had a horrible exposure, all of which I discussed with him. And this is Mr. McGregor, the attorney, Mr. McGregor's testimony. It's also, Your Honor, if we look at the letter on which counsel relies, and that's at excerpt of record number 60. This is the letter that Mr. McGregor wrote to him about a year after the fact. At the very beginning of page 60 of the excerpt of record, from our first contact, you were advised how serious any strike case is. I told you your exposure about the reduction of good time work time credits and the good and bad of the cases you had. And as the judge found in the excerpt of record. Now, there's no finding to that effect from the superior court. Your Honor, the judge says that he was told about the exposure. There was a finding that he was not told the exact maximum. And that's at page 234 of the excerpt of record. I do not see in the record, page 234 of the excerpt of record, starting at line 15. I do not see in the record that there was any --" this is the State court judge's ruling. I do not see in the record that there was any discussion of minimum or maximum sentence. But I'm not sure that that particular issue is of significant consequence when you're talking about a one-year sentence as opposed to a strike. And then he goes on to say about how Mr. McCutcheon, had Mr. McCutcheon just fallen off the turnip truck, it might be a different situation. But Mr. McCutcheon has been around the block.  And that also --" That's not very much. It's colorful. But what it does not say to me is I find that McGregor told him he had horrible exposure. What it does seem to say is he should have known because he didn't --" he's been around the block and he didn't fall off the turnip truck. And, Your Honor, if I could --" He should have known, which to me almost sounds the opposite of he was told. There's no point in saying he should have known if the judge found he was told. Right? Because if the judge finds it necessary to say there was no need to tell him because he didn't fall off the turnip truck, it must be a finding, implicit or otherwise, that he wasn't told. Well, I would disagree that it's an implicit finding that he wasn't told. It's at the very least a lack of a finding that he was told. There is a lack of finding that he was told that. But if Your Honor would turn to the next page, starting at line 14, and again, this is the judge speaking, if I believe that Mr. Mulfetta, who is the attorney, told Mr. McCutcheon not to take this deal, he could get a better one, I would report him to the State Bar. In other words, the judge found that these attorneys were begging Mr. McCutcheon to take the deal. Well, but that's the advice that they gave him was true. That's true, but it's not all that helpful to you because they could be begging him to take the deal, but if they don't tell him his exposure, then their begging would be useless. I mean, you know, well, unless you see a lawyer begging, you know. Your Honor, with all due respect, when one retains attorneys and pays them good money, one would expect them to listen to their advice. And the advice that they were giving, the advice counsel was giving was to take this deal. But that's not the test. The test is not whether or not he should have taken his lawyer's advice. The question was whether he was laid out the – he was aware of the consequences of not taking the plea. Well, Your Honor, to be accurate, the question in this case is whether the State Court's determination that there was no evidence that he would have taken the plea was a reasonable determination of the facts or not. And that was what the State Court found under AEDPA. We give deference to the State Court, but, of course, if one looks at what the district court does, the district court did not just give deference to the State Court, but the district court went ahead and reviewed the entire record, made an entire review of the record, independent review of the record, and found additional facts supporting the State Court's finding that there was no – no shred of evidence that Mr. McCutcheon would have taken any deal in this case. And that's really the – that's the issue here, is was – were counsel ineffective? Counsel told him – told him to take the deal. Counsel begged him to take the deal. Counsel told him he had horrible exposure if he did not take the deal. And Mr. McCutcheon said, get me credit for time served. And the attorney went back to the judge and got credit for time served. Walk out today. And Mr. McCutcheon said, no, I don't want that now. I want to be not on formal probation. There's no findings on the horrible exposure, right, from the State Court? The State Court judge did not make specific findings on every fact. Did the district court make a finding on – on that point? I – I mean, whether he was told 17 years or horrible exposure. I'm willing to buy into the idea that when you say horrible exposure, that's – conveys the idea of 17 years. I think that's – The findings were at both the district court – Is there anything in the district court that defines that? The district court, like the State Court, finds that the specific amount of actual exposure was not conveyed to Mr. McCutcheon. And that was the – The best you – the best you have on that is that the attorney testified it was his custom and practice, and he said he didn't recall whether he did in this case. That's correct. But the State Court didn't find that strong enough to make a finding, or at least didn't make a finding. What the district court did, similar to what the State Court did, was under Strickland, of course, you have the two prongs. And you don't necessarily even have to make a finding on deficient performance if you find that there is absolutely no prejudice. And that's how this case was decided in both the State Court and both the district court. I would submit that neither the State Court nor the district court made an absolute finding of deficient performance. I would submit that both courts made no finding on the question of deficient performance and simply said under Strickland, we're going to look at the second prong. And the second prong is there is no prejudice here because Mr. McCutcheon would not have taken the seal. You know, that becomes a very difficult hurdle or a very difficult thing to sustain. What you're saying is, look, assume this guy had horribly deficient counsel. Just worst lawyer in the world. You know, incompetent, drunk, doesn't know the law, never meets with his client. And nevertheless, this client wouldn't have taken a deal. Well, part of what taking a deal involves is having a lawyer that explains to you why it's such a good idea to take a deal. So if counsel is sufficiently inept or incompetent or otherwise, you know, doesn't do his job, then so say, well, you would never have taken a deal. Well, maybe you would have taken a deal because your lawyer didn't do such a good job telling you how bad off you'll be if you don't take the deal. So the two things are not quite as independent as you would like to make them out to be. Your Honor, that's correct. They're not independent. And every case is fact-specific and must be looked at the facts. And in this case, when both the district court and the State court looked at the facts, they found that Mr. McCutcheon was, as I say, I think that neither court made a finding on deficient performance one way or the other. But both courts made a very strong finding that no matter what he was told, Mr. McCutcheon would not have taken the deal in this case. It's a credibility question. And both the State court judge found Mr. McCutcheon not credible and the jury found him not credible.      Your Honor, he did a very nice job. He Hubris lowered the contrary. I'm sure . Rock needed a little clarification. I don't know what paper can you bring up opposing counsel's extra minute. Three fold, you've done it. Okay. The deal is there's no other choice. But the fact that he stated on numerous occasions to his lawyer before the fact that he didn't want to go to trial, that's I would submit absolutely inconsistent. And this is out of the lawyer's mouth, out of the adversary's mouth or pen. It's absolutely inconsistent with the premise that Mr. McCutcheon was not amenable to a deal. He didn't want to go to trial. He didn't seem to want to take yes for an answer, though. I'll agree with that. He was not the easiest client in the world. He makes a deal and says, no, I don't want to take that deal. I'm going to I'm going to I want a little better deal. Maybe if he had known his exposure and he had known that this is the train is leaving the station here, might have changed the result. What do you make of McGregor's testimony where he says, I told him he had horrible exposure? That's a fact in the record. That that that is a fact in the record. And I think that just the fact, like counsel said, that there were a number of felonies charged here, that would that would be true. But horrible exposure is kind of abstract. I mean, if he has to he didn't want to go to trial. Oh, I don't know. Horrible exposure sounds like a lot of time. I suppose. Yeah. I mean, it sounds like it's a serious case. Mr. McCutcheon obviously didn't play his cards right here. But if the cards weren't explained, that's the lawyer's job to explain the hand that he's got. And then if the client misplayed the hand. Thank you. Thank you. The case is there. It will be submitted next.
judges: Reinhardt, Kozinski, Thomas